# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

No. 11-30540
Summary Calendar

February 6, 2012

Lyle W. Cayce
Clerk

STEPHEN KEITH SMITH,

Plaintiff-Appellee,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, doing business as
CIGNA Group Insurance,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana
Civil Action No. 09-1579

Before HIGGINBOTHAM, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

Life Insurance Company of North America (LINA) appeals the district
court's grant of summary judgment in favor of Stephen Smith, the beneficiary
of an ERISA-governed life insurance policy covering his deceased wife, Stephanie
Smith.  For the reasons set forth below, we REVERSE and REMAND for entry
of judgment in favor of LINA.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-30540

## I.

On August 28, 2008, Mrs. Smith died in her home in Youngsville, Louisiana. When the paramedics arrived at the Smith's home, they found pills in Mrs. Smith's mouth and scattered on the bedroom floor. The autopsy report revealed abundant white sediment in Mrs. Smith's stomach, and the toxicology report found that her blood contained the following prescription drugs: (1) phenobarbital; (2) hydrocodone; (3) meperidine; (4) normeperidine; (5) zolpidem (Ambien); (6) acetaminophen; (7) tramadol; and (8) nortramadol. The defendant's toxicology report found that Mrs. Smith had ingested more than ten times the maximum recommended dosages of Ambien and hydrocodone, and that she consumed independently-lethal amounts of hydrocodone and merperidine.

All of the drugs but tramadol and hyrdocodone had been prescribed to Mrs. Smith, who was being treated for depression, shortly before her death. The parties do not dispute that Mrs. Smith unilaterally consumed the prescription drugs in a manner that was inconsistent with any advice or direction that she may have received from a physician. They do dispute, however, whether Mrs. Smith affirmatively intended to consume the drugs or accidentally did so while she was in a hallucinogenic state caused by the Ambien.

The Lafayette Parish Coroner's Office deemed her death a suicide caused by the ingestion of prescription drugs. Later, a deputy coroner changed the cause of death from suicide to undetermined. However, the parties agree that Mrs. Smith unilaterally consumed the prescription drugs: she was not induced or forced to do so by any other person.

Mr. Smith submitted a claim to LINA seeking to recover accidental death benefits pursuant to an ERISA-governed life insurance policy issued and administered by LINA. LINA denied Mr. Smith's claim to benefits based on multiple policy exclusions, including exclusions for death caused by: (1) suicide;

(2) sickness or disease (including mental infirmity); and (3) the voluntary ingestion (the "voluntary ingestion exclusion") of any drug unless taken in accordance with a physician's instructions.  LINA also denied Mr. Smith's appeal of its decision.

Mr. Smith then brought this action before the district court.  On cross motions for summary judgment, the district court found in favor of Mr. Smith, awarding him full benefits under the LINA policy, costs, attorney's fees, and post-judgment interest.  The district court rejected LINA's contention that LINA properly denied benefits based upon, among other exclusions, the plan's voluntary ingestion exclusion, which explicitly excluded from coverage death resulting from the "voluntary ingestion of any narcotic, drug, poison, gas, or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage."[1]

The court reasoned that because death was almost certain to result from the consumption of such a large quantity of prescription drugs, Mrs. Smith either affirmatively intended to commit suicide or accidentally ingested the pills while in a hypnotic or hallucinogenic state caused by Ambien.[2]  The court dismissed as unreasonable the notion that Mrs. Smith could have ingested the prescription drugs for any other purpose, such as recreational enjoyment or the bona fide desire to remedy an ailment.  The court next eliminated the prospect that Mrs. Smith affirmatively intended to commit suicide because LINA stipulated in district court that Mrs. Smith did not intend to commit suicide

---

[1] The parties raise numerous issues on appeal involving: (i) LINA's interpretation of its other policy exclusions, and (ii) and the intersection of state and federal common law in ERISA cases.  We need not address these issues, however, because this case can be properly resolved under the voluntary ingestion exclusion.

[2] Mr. Smith submitted a physician's report indicating that Mrs. Smith accidentally and involuntarily overdosed on the prescription drugs because: (1) Ambien produces hypnotic effects which "lead to forgetting of recent drug doses, resulting in multiple ingestion leading to lethal drug overdose;" and (2) the co-ingestion of hydrocodone, meperidine, and Ambien is known to induce unintentional overdoses.

(thus, triggering the suicide exclusion) when she ingested the prescription drugs.[3]

Based on this analysis, the only remaining issue for the district court to consider was whether Mrs. Smith's consumption of the drugs while in a hallucinogenic state constituted the *voluntary* ingestion of those drugs. The court found that the term "voluntary" was vague and ambiguous because: (1) it was not defined in the ERISA plan; and (2) it could be broadly construed to include unintentional conduct or narrowly construed to exclude such conduct. Relying on the principle that ambiguous terms in an insurance policy are construed in favor of the insured, the court chose the narrower construction of "voluntary," one excluding the ingestion of drugs in a hallucinogenic state. The court then granted summary judgment in favor of Mr. Smith. This appeal followed.

## II.

This court reviews a district court's judgment on cross motions for summary judgment *de novo*, applying the same standard as the district court. *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007). We independently review each motion and its supporting evidence, viewing the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

---

[3] The record nevertheless reflects that LINA did, in fact, believe that Mrs. Smith committed suicide. For instance, LINA's first letter to Mr. Smith denying coverage stated that "[b]ased on the information received with this claim, Mrs. Smith was under medical treatment for depression and she died as a result of her voluntary ingestion of medications above the prescribed dosage and which appear to have been taken in an attempt to commit suicide." LINA, nevertheless, subsequent stipulated that the suicide exclusion was inapplicable.

In ERISA cases, when "the language of the plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."[4] *High v. E-Systems, Inc.*, 459 F.3d 573, 576 (5th Cir. 2006). "A plan administrator abuses its discretion where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc)). Likewise, "[w]e reach a finding of abuse of discretion only where 'the plan administrator acted arbitrarily or capriciously.'" *Id.* (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)). A plan administrator's decision to deny benefits is arbitrary and capricious when it is made without a rational connection to the facts and evidence. *Id.* Moreover, "our 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end.'" *Id.* at 247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007).

Furthermore, the "[e]ligibility for benefits under any ERISA plan is governed in the first instance by the plain meaning of the plan language." *Tucker v. Shreveport Transit Mgmt. Inc.*, 226 F.3d 394, 398 (5th Cir. 2000) (quoting *Threadgill v. Prudential Sec. Grp., Inc.*, 145 F.3d 286, 292 (5th Cir.

---

[4] Typically, we perform a two-step inquiry when evaluating a plan administrator's denial of benefits. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009) (citations omitted). First, we evaluate whether the administrator's decision was legally correct. *Id.* If the decision was legally correct, our inquiry is complete as there is no abuse of discretion. *Id.* We proceed to the second step, however, if the decision was legally incorrect, analyzing it for an abuse of discretion. *Id.* "Nonetheless, we are not confined to this test; we may skip the first step if we can more readily determine that the decision was not an abuse of discretion." *Id.*; *see also High v. E-Systems, Inc.*, 459 F.3d, 573, 577 (5th Cir. 2006) ("[T]his court, however, is not confined to this [two-step] test; we may skip the first step if we can determine the decision was not an abuse of discretion.") (citing *Duhon v. Texaco*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994)). In this case, we do not consider whether the decision was legally correct and instead proceed to the abuse of discretion inquiry.

1998)). We interpret the plan terms in accordance with their "ordinary and popular sense as would a person of average intelligence and experience." *Crowell v. Shell Oil Co.*, 541 F.3d 295, 314 (5th Cir. 2008) (citations omitted). Thus, the terms are constructed as they would likely be "understood by the average plan participant, consistent with the statutory language." *Id.* (citations omitted).

It is also noteworthy, particularly in this case, that when reviewing an administrator's interpretation of plan terms for an abuse of discretion, the doctrine of *contra proferentum*–which provides that ambiguous terms are construed in favor of the insured–is inapplicable. *E-Systems*, 459 F.3d at 578-79; *see also Rhorer v. Raytheon Eng'rs and Constructors, Inc.*, 181 F.3d 634, 642 (5th Cir. 1999); *Dunn v. GE Grp. Life Assurance Co.*, 289 Fed. App'x 778, 780-81 (5th Cir. 2008) (per curiam). To the contrary, plan administrators may exercise "interpretive discretion" when construing ambiguous terms in ERISA plans. *E-Systems*, 459 F.3d at 579.

Here, the parties previously stipulated that the employee benefit plan at issue in this litigation is governed by ERISA and that the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe the terms of the plan. Accordingly, the district court should have overturned LINA's denial of benefits only after finding that LINA abused its discretion when denying Mr. Smith's claim to benefits. We conclude, however, that LINA did not abuse its discretion in determining that Mrs. Smith's death fell under the voluntary ingestion exclusion. The district court, therefore, erred in awarding benefits to Mr. Smith.

Simply put, the district court's decision turned the deference afforded to plan administrators flatly on its head, by: (i) mistakenly applying the doctrine of *contra proferentum* to construe the ambiguity in the term "voluntary" against LINA; and (ii) finely parsing the plan's language without paying any heed, save lip-service, for the discretion that was reasonably exercised by LINA when

interpreting the voluntary ingestion exclusion. Contrary to the district court's conclusion, the evidence and LINA's reasonable interpretation of the plan's terms indicates that LINA, and not Mr. Smith, was entitled to summary judgment as a matter of law.

The evidence undisputably shows that Mrs. Smith unilaterally ingested prescription drugs in a manner that greatly exceeded their prescribed dosages. Mrs. Smith also consumed two drugs, hydrocodone and tramadol, that had not been recently prescribed by a physician. It was reasonable, and within LINA's discretion, to conclude that a death caused by the unilateral misuse of powerful narcotic drugs–irrespective of the intent or lack thereof underlying the misuse (i.e. suicide, recreational enjoyment, remedying ailments, or accidental hallucination)–fell within the voluntary ingestion exclusion. Such an interpretation of "voluntary" is within the realm of an average plan participant's understanding of the term. *See Crowell*, 541 F.3d at 314. Therefore, the district court erred in substituting its own, narrower interpretation of the term "voluntary" in the place of LINA's reasonable, yet broader, interpretation.[5] *See E-Systems*, 459 F.3d at 578-79.

Thus, even if Mrs. Smith's death was caused by an accidental overdose, as argued by Mr. Smith, it still falls within the voluntary ingestion exclusion as it is interpreted by LINA. Given the deference owed to LINA, we are not in a position to second-guess this reasonable interpretation of the voluntary ingestion exclusion.

---

[5] We recognize that the LINA's conflict of interest–based on LINA's role as both the insurer and plan administrator–is a factor that must be weighed in determining whether LINA abused its discretion. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-16 (2008); *Holland*, 576 F.3d at 247-48. This factor does not undermine our conclusion that LINA reasonably exercised its discretion in denying the benefits sought by Mr. Smith.

No. 11-30540

### III.

We REVERSE and REMAND for entry of judgment in favor of LINA because LINA did not abuse its discretion in denying benefits to Mr. Smith based upon the voluntary ingestion exclusion.