# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30745

United States Court of Appeals
Fifth Circuit

**FILED**

July 3, 2014

Lyle W. Cayce
Clerk

LOY M. MCCORKLE,

Plaintiff-Appellee

v.

METROPOLITAN LIFE INSURANCE COMPANY;
TURNER INDUSTRIES GROUP, L.L.C.,

Defendants-Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-124

Before SMITH, WIENER and PRADO, Circuit Judges.

WIENER, Circuit Judge:*

Harvey McCorkle ("Harvey") died in January 2010. His wife, Plaintiff-Appellee Loy M. McCorkle ("Loy"), sued both Harvey's employer, Turner Industries Group, LLC ("Turner"), and Metropolitan Life Insurance Company ("MetLife"), the administrator of Turner's ERISA-governed[1] employee welfare

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The parties stipulated that the Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

No. 13-30745

plan ("the Plan"), for benefits triggered by Harvey's death. On cross-motions for summary judgment, the district court held that MetLife abused its discretion and granted judgment to Loy for full benefits under the Plan, from which judgment MetLife and Turner (together, "Appellants") timely filed a notice of appeal. As we conclude that MetLife did not abuse its discretion when it denied benefits on the basis of substantial evidence that Harvey committed suicide, we reverse and render judgment in favor of Appellants, dismissing Loy's action with prejudice at her cost.

## I.     FACTS AND PROCEEDINGS

### A.     Harvey's Death

From 2002 until his death in January 2010, Harvey was a Turner employee and was eligible for coverage under the Plan for both accidental death and dismemberment ("AD&D") and supplemental life insurance benefits. The Plan vested MetLife as plan administrator with "discretionary authority to interpret the terms of the Plan and to determine eligibility" for benefits.

On January 13, 2010, Harvey visited his family physician, complaining of stress at work and trouble sleeping during the previous six months. He indicated that he had not been able to sleep at all for the three days preceding that office visit. His physician ruled out depression and treated Harvey for insomnia and anxiety by prescribing 3 milligrams per day of the sleep aid Lunesta. Harvey took his first dose of Lunesta on January 13 and repeated it on January 14 and 15. While taking the drug, he complained to Loy at some point about having problems with "fuzzy memory."

Before going to bed at midnight on January 16, Harvey again took Lunesta as prescribed. A few hours later, he got out of bed. Shortly thereafter, Loy found him lying in their driveway in a pool of blood suffering from a gunshot wound to his head. She called 911.

Detectives from the East Baton Rouge Sherriff's Department ("EBRSD") responded to the scene "in reference to an attempted suicide." Harvey was transported to the hospital where he died several hours later. According to the treating physician at the hospital, Harvey had likely placed the handgun found at the scene under his chin, aimed it in an upward direction, and pulled the trigger. One detective personally observed that Harvey had an "exit wound on the left side of his head toward the top with what appeared to be brain matter oozing out of the wound." Another detective noted blood on Harvey's body and hands, as well as something that appeared to be "blowback" on his left hand.

Detectives recovered a .45 caliber revolver lying approximately two feet from the blood stain on the driveway. The gun's cylinder contained five live rounds and one fired round; the fired round was in line with the barrel and hammer. This evidence led detectives to "believe that the weapon was only fired one time and that no other attempt to fire the weapon had been made." No one found a suicide note.

The parish coroner issued Harvey's death certificate the following month, listing the cause of death as "suicide." Although he later provided affidavits explaining that Harvey was likely under the influence of Lunesta and therefore did not "consciously and intentionally t[ake] his own life," the coroner made no move to amend the death certificate to reclassify the death as accidental.

### B.    The Administrative Proceedings

Loy filed a claim under the Plan in August 2010 seeking basic life insurance, optional life insurance, and AD&D benefits. MetLife paid her $50,000 in basic life insurance benefits in September 2010. In a subsequent letter to Loy, MetLife denied the remainder of her claim because the information in the administrative claim file indicated that Harvey had committed suicide. Regarding AD&D benefits, MetLife explained that

Harvey's death was not an accident, so the Plan's exclusions for suicide and intentionally self-inflicted injury applied.  Regarding optional life insurance benefits, MetLife explained that, because Harvey's death occurred less than two years after his optional life coverage had become effective, the Plan's suicide exclusion applied.

Through counsel, Loy administratively appealed MetLife's adverse benefits determinations.  She contended, *inter alia*, that Lunesta caused his behavior, so he did not intentionally shoot himself.  In support of her Lunesta theory, Loy submitted to MetLife: (1) copies of Harvey's medical records from his treating family physician; (2) an affidavit from another medical doctor; (3) an affidavit from the coroner; (4) an affidavit from a pharmacist; (5) her own affidavit; (6) Lunesta package inserts;[2] and (7) an article entitled "FDA Strengthens Warnings on Sleep Drugs and Lunesta Oral."  Loy claimed that this evidence tended to show that, even if Harvey pulled the trigger on the gun that killed him, he did so "while acting out of his head and unaware of what he was doing" because he was taking Lunesta.  Thus, she argued, Harvey's death was not suicide because he did not have the requisite intent to cause his own death.

MetLife reviewed Loy's appeal and, in April 2011, stood by its original decision.  MetLife nevertheless afforded Loy another opportunity to appeal, which it was not required to do under the Plan.  In September 2011, MetLife again reviewed Loy's claim and again denied it.  MetLife also notified Loy of her right to bring a civil action pursuant to ERISA to recover any benefits that she believed were still owed.  Instead, in December 2011 and January 2012,

---

[2] The parties refer to the literature contained in packages of Lunesta as "package inserts."  That literature warns that some people who have taken Lunesta have experienced "unusual changes in their thinking and/or behavior," including confusion, strange behavior, and hallucinations.

No. 13-30745

Loy sent MetLife further evidence in support of her claim. MetLife did not consider those additional submissions because Loy had already exhausted her administrative remedies under the Plan.

## C.    The District Court Proceedings

In February 2012, Loy filed the instant civil action in the Middle District of Louisiana pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking full benefits due under the Plan, plus attorney's fees, costs, and interest. The parties eventually filed cross-motions for summary judgment. In their motion, Appellants insisted that MetLife's administrative determination denying Loy's claim was reasonable and based on substantial evidence, and therefore was not an abuse of discretion. In her motion, Loy countered that MetLife had failed to give her claim a full and fair review and that it had abused its discretion when it denied her claim.

The district court held oral argument on the summary judgment motions, at the conclusion of which the court granted Loy's motion and denied Appellants'. The district judge orally stated[3] for the record that it was "*more reasonable*, based on the facts and evidence in this case, that [Harvey] was under the control of the Lunesta and not [acting] of his own free will or volition."[4] Relying on the definition of suicide in *Black's Law Dictionary*, he concluded that "Lunesta caused [Harvey's] death" and held that MetLife abused its discretion because—in the words of the court—the drug "took away [Harvey's] understanding that this was self-destruction." The court then

---

[3] Consistent with his recent practice, this district judge from the Western District of Louisiana, sitting by designation in the Middle District, did not favor us or the parties with written reasons.

[4] Emphasis added.

5

No. 13-30745

entered judgment for Loy, awarding her full benefits under the Plan, as well as attorney's fees, costs, and interest.

On appeal, Appellants present but one question for this court's consideration: Did the district court reversibly err in holding that MetLife abused its discretion when it determined that Loy was not entitled to benefits under the Plan?

## II.    ANALYSIS

### A.    Standard of Review

This court reviews "a district court judgment on cross-motions for summary judgment de novo."[5] All evidence and inferences must be construed in the light most favorable to the non-moving party.[6] "Summary judgment is only appropriate if the evidence shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[7]

It apparently bears repeating here that district courts hearing complaints from disappointed ERISA plan members or their beneficiaries for the administrative denial of benefits are *not* sitting, as they usually are, as courts of first impression. Rather, they are serving in an appellate role.[8] And, their latitude in that capacity is very narrowly restricted by ERISA and its regulations, as interpreted by the courts of appeals and the Supreme Court,

---

[5] *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (citing *White Buffalo Ventures, LLC v. Univ. of Tex.*, 420 F.3d 366, 370 (5th Cir. 2005)).

[6] *Id.*

[7] *High v. E-Sys. Inc.*, 459 F.3d 573, 576 (5th Cir. 2006).

[8] *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 511-12 (5th Cir. 2010) (per curiam). ("This court reviews *de novo* the district court's conclusion that an ERISA plan administrator did not abuse its discretion in denying benefits, and in doing so reviews the plan administrator's decision from the same perspective as the district court." (internal citations omitted)).

including the oft-repeated admonition to *affirm* the determination of the plan administrator *unless* it is "arbitrary" or is not supported by at least "substantial evidence"—even if that determination is *not* supported by a preponderance.[9]   We had thought that by now this was understood and accepted by all district judges of this circuit.  But, as this case demonstrates that we were wrong, at least as to one of them, we try yet again to drive that message home.

When, in an ERISA case, "the language of the plan"—like the one at issue here—"grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."[10]   "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial."[11]   "We reach a finding of abuse of discretion only [when] 'the plan administrator acted arbitrarily or

---

[9] *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004) ("If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.").

[10] *High*, 459 F.3d at 576.  As we have previously stated, "[a]pplying an abuse of discretion review of an administrator's interpretation of the plan consists of a two-step process: first inquiring whether the plan administrator's decision was 'legally correct,' and, if it is not, secondly inquiring whether the administrator abused his discretion." *Porter v. Lowe's Cos., Inc.'s Bus. Travel Accident Ins. Plan*, 731 F.3d 360, 364 (5th Cir. 2013) (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)).  Nevertheless, this court may " 'bypass, without deciding, [the issue] whether the Plan Administrator's denial was legally correct, reviewing only whether the Plan Administrator abused its discretion in denying the claim' if that can be 'more readily determine[d].' " *Porter*, 731 F.3d at 364 (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009)).  Because the parties have not briefed whether MetLife's decision was "legally correct," but rather debate whether the benefits denial ultimately was an "abuse of discretion," we dispense with step one of the analysis.

[11] *Holland*, 576 F.3d at 246 (citation and internal quotation marks omitted).

7

capriciously.' "[12] "A decision is arbitrary if it is 'made without a rational connection between the known facts and the decision.' "[13]

Even though the "administrator's decision to deny benefits must be supported by substantial evidence,"[14] s*ubstantial evidence* is merely "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] Ultimately, a court's " 'review of the [Plan] administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.' "[16] Obviously, no court may substitute its own judgment for that of the plan administrator.[17]

---

[12] *Id.* (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999)).  To put it another way, the "abuse of discretion" standard "is the functional equivalent of arbitrary and capricious review: '[t]here is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context.' " *Anderson*, 619 F.3d at 512.

[13] *Holland*, 576 F.3d at 246 (quoting *Meditrust Fin. Servs.*, 168 F.3d at 215).

[14] *Id.*

[15] *Ellis*, 394 F.3d at 273 (citation and internal quotation marks omitted).

[16] *Holland*, 576 F.3d at 247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)); *see also Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002) (stating that the administrator's decision must be "based on evidence, even if disputable, that clearly supports the basis for its denial" (citation omitted)).

[17] *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 513 (5th Cir. 2013), *cert. denied*, 2014 WL 235015 (U.S. Mar. 31, 2014) ("[W]e decline to substitute our judgment for that of the plan administrator."); *McDonald v. Hartford Life Grp. Ins. Co.*, 361 F. App'x 599, 608 (5th Cir. 2010) (unpublished) ("The reviewing court may not substitute its judgment for that of the plan administrator.").
    We note that a "court must take into consideration the conflict of interest inherent in a benefits system in which the entity that pays the benefits . . . maintains discretionary control over the ultimate benefits decision." *Anderson*, 619 F.3d at 512 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111-16 (2008); *Holland*, 576 F.3d at 247 n.3).  Although such a conflict is "one factor among many that a reviewing judge must take into account" when considering a fiduciary's benefits determination, the mere existence of a conflict does not alter

## B. Merits

Appellants insist that MetLife did not abuse its discretion in denying Loy's claim because *substantial evidence* supports its determination that Harvey committed suicide.[18] We agree. Evidence in the administrative record, including but not limited to Harvey's death certificate and the EBRSD reports, indicates that Harvey died from a self-inflicted gunshot wound. Even if we were to assume *arguendo* that Harvey was hallucinating or somehow unaware of what he was doing when he shot himself, this would not obviate the undisputed fact that he actively pulled the trigger: The gun did not discharge accidentally and there is no evidence of third party presence, much less involvement. Indeed, our conclusion would be no different if Harvey had been under the influence of alcohol or illicit drugs, had lost at Russian Roulette, or had been delirious from profound sleep deprivation. Under any of those circumstances, death resulting from his own non-accidental discharge of the gun that he owned, loaded, placed under his chin, and fired would still be self-inflicted—and thus reasonably deemed by MetLife to be "suicide" within the

---

the standard of review. *See Holland*, 576 F.3d at 247 ("[W]eighing a conflict as a factor in the abuse of discretion analysis does not 'impl[y] a change in the standard of review, say, from deferential to *de novo* review.'" (quoting *Glenn*, 554 U.S. at 115)). When a claimant, like Loy here, does not come forward with any evidence that the conflict of interest influenced the fiduciary's benefits decision, the court gives this factor little or no weight. *Glenn*, 554 U.S. at 117; *Anderson*, 619 F.3d at 512; *Holland*, 576 F.3d at 249.

[18] We need not reach Loy's argument that MetLife failed "to follow the dictates of *Vega*" when it did not consider the supplemental evidence she adduced after her second appeal was denied in September 2011. Although we recognize that in *Vega* this court, sitting en banc, stated that, if a claimant "submits additional information to the administrator . . . and requests the administrator to reconsider his decision, that additional information should be treated as part of the administrative record," *Vega*, 188 F.3d at 300, we may sidestep any "thorny timing issues posed by *Vega*" when the additional information is "cumulative" or "irrelevant." *Anderson*, 619 F.3d at 516 & n.9. Loy's post-September 2011 evidence—which further addressed Lunesta's side effects and Harvey's state of mind—was cumulative of the evidence already contained in the administrative record at the time that MetLife gratuitously reconsidered then denied her second appeal.

meaning of the Plan. And there is a plethora of *substantial evidence* to support such a determination, even if the district judge here thought it was "more reasonable, based on the facts and evidence in this case"—his words—that Harvey was not acting of his own "free will or volition." Weighing the evidence that way constitutes finding the "preponderance," which has no place in this ERISA review.

The district judge also disregarded the rule that, when an ERISA plan vests a fiduciary with discretion to interpret plan terms, the fiduciary "has the power to resolve ambiguities."[19] The question for any reviewing court "is not whether the interpretation of the Plan 'is most persuasive, but whether the plan administrator's interpretation is unreasonable.' "[20] By relying on nothing other than *Black's Law Dictionary* for the definition of suicide and then weighing the record evidence *de novo* instead of reviewing it for substantial evidence and thus reasonableness, this district judge yet again, as he did in *Smith*, "turned the deference afforded to plan administrators flatly on its head."[21] Moreover, in so doing, he repeated conduct we had condemned previously when he "finely pars[ed] the plan's language without paying any

---

[19] *Porter*, 731 F.3d at 365. Regarding ambiguity of the undefined term, "suicide," in the Plan, the district judge stated:

> I continue to be perplexed as to why some of these—if not most—policies for life insurance don't define suicide, since it is an actual exclusion, so that people would know what is meant by suicide. . . . So we looked up the *Black's Law Dictionary* definition of suicide, and it states . . . : ["]Suicide is the willful and voluntary act of a person who understands the physical nature of the act and intends by it to accomplish the results of self-destruction.["] That's pretty clear. That's not confusing. So if this lady, widow, was denied the extra insurance that was paid for by her husband because it was suicide, then someone has the obligation of putting into the policy itself what suicide is.

[20] *Id.* (citing *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 553 (9th Cir. 1995)).

[21] *Smith v. Life Ins. Co. of N. Am.*, 459 F. App'x 480, 484 (5th Cir. 2012) (unpublished).

heed, save lip-service, for the discretion that was reasonably exercised by [MetLife] when interpreting" the term "suicide."[22]  As he had in *Smith*, this judge erred by "substituting [his] own, narrower interpretation of the term ["suicide"] in place of [MetLife's] reasonable, yet broader, interpretation."[23] And he expressly confirmed that he did so in full awareness that he was proceeding in violation of established circuit law, stating on the record at the oral argument hearing of this case: "I know how the Fifth Circuit feels about this, and I may get reversed again."

We have repeatedly emphasized that the standard of review the district courts—and this court, for that matter—*must apply* in these ERISA cases is the *deferential* abuse of discretion standard.[24]  In the words of the Fourth Circuit, when a court reviews a plan administrator's decision for abuse of discretion, it must "not disturb an administrator's decision if it is reasonable, *even if the court would have reached a different decision.*"[25]  Given the absence of any evidence whatsoever that the gun went off accidentally or was fired by a third party, MetLife's determination that Harvey's non-accidental taking of his own life was a suicide was indisputably reasonable, i.e., it was rationally connected to the known facts.  For the district court to overturn MetLife's decision was error.

---

[22] *Id.*

[23] *Id.*  We need not reach the question whether Louisiana's presumption against suicide applies in this case.  *See, e.g., Zanca v. Life Ins. Co. of N. Am.*, 770 So. 2d 1, 4 (La. App. 4th Cir. 2000) (citing *Canal-Commercial Bk. v. Employer's Liab. Assurance Corp.*, 99 So. 542, 545 (La. 1924)).  Even assuming *arguendo* that the presumption is applicable, MetLife did not abuse its discretion in denying Loy's claim because, as we have discussed, its determination that Harvey committed suicide was reasonable.

[24] *Holland*, 576 F.3d at 247.

[25] *Donovan v. Eaton Corp. Long Term Disability Plan*, 462 F.3d 321, 326 (4th Cir. 2006) (emphasis added).

No. 13-30745

## III.  CONCLUSION

Harvey's death under the circumstances of this case is indeed tragic. Distressing facts, however, do not relieve the district court of its duty to uphold a plan administrator's benefits determination when, as here, it falls "somewhere on a continuum of reasonableness."[26]  Although, by his own words, the district judge "kn[ew] how the Fifth Circuit feels about this," he deliberately ignored our previous instructions by selecting—in his words—the "more reasonable" of two reasonable conclusions, Loy's over MetLife's. Regrettably, we must take this opportunity to remind him and all district courts of this circuit that the reviewer may never substitute its judgment for the reasonable judgment of the plan administrator when it is grounded in substantial evidence.[27]

Our *de novo* review confirms that MetLife's benefits determination was grounded in substantial evidence and was neither arbitrary nor unreasonable. We therefore hold that MetLife did not abuse its discretion in denying Loy's claim for benefits under the Plan.  Accordingly, we reverse the district court's judgment and render judgment in Appellants' favor, dismissing Loy's action with prejudice at her cost.

REVERSED and RENDERED.

---

[26] *Holland*, 576 F.3d at 247.

[27] *Truitt*, 729 F.3d at 513; *McDonald*, 361 F. App'x at 608.

12