# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 24, 2013

No. 12-60683

Lyle W. Cayce
Clerk

JOSH PORTER, Individually and on behalf of all wrongful death
beneficiaries of Elizabeth A. Porter,

Plaintiff - Appellee Cross-Appellant

v.

LOWE'S COMPANIES, INCORPORATED'S BUSINESS TRAVEL
ACCIDENT INSURANCE PLAN; GERBER LIFE INSURANCE COMPANY,

Defendants - Appellants Cross-
Appellees

Appeals from the United States District Court
for the Southern District of Mississippi

Before DAVIS, JONES, and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff Josh Porter brought suit against Defendants Lowe's Companies,
Incorporated's Business Travel Accident Insurance Plan, and Gerber Life
Insurance Company to challenge the Plan Administrator's denial of benefits
under an ERISA Plan. The district court granted relief from that denial and
awarded benefits, concluding that the Plan Administrator had abused its
discretion. Because we find the Plan Administrator did not abuse its discretion,
we reverse and render judgment in favor of the defendants.

No. 12-60683

I.

This is a suit to recover benefits under a plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA").[1] Elizabeth Porter ("Elizabeth") died while employed as a manager at Lowe's, Inc. ("Lowe's"). As an employee of Lowe's, Elizabeth was covered under the Business Travel Accident Insurance Plan ("the Plan"). The Plan is established and maintained by Lowe's and regulated under ERISA. Gerber Life Insurance Company ("Gerber") underwrote and insured the Plan. A.C. Newman & Company Insurance Correspondents, Inc. ("Newman"), an independent plan administrator, administered the Plan.[2] The Plan gave the Administrator the power "to interpret the terms of the Plan and to determine the eligibility for Plan benefits." Josh Porter ("Mr. Porter") is the surviving spouse of Elizabeth and beneficiary of the Plan.

Elizabeth was an Administrative Manager at Lowe's. On February 24, 2008, she closed the store and was returning home when she received a call that the security alarm at Lowe's had been triggered. Elizabeth turned around to return to the store. She was one of three employees on call to respond to the alarm. En route to the store, her car was hit head-on by an automobile in the wrong lane of traffic. Both Elizabeth and her unborn child died.

The Plan provides benefits for a death that occurred on a bona fide business trip in furtherance of Lowe's business. The Plan provides in pertinent part:

---

[1] 29 U.S.C. § 1001 et seq.

[2] Though originally named as a defendant, Newman has been dismissed based on a stipulation that Gerber would be liable for any damages resulting from a judgment for the Plaintiff. Thus the parties in this appeal are Gerber and the Plan (collectively "Defendants").

2

No. 12-60683

SECTION V - COVERAGE PROVISION

**Description of Hazards**

Coverage will apply to an Injury sustained by an Insured Person when on Business for the Policyholder during any *bonafide trip*.

Coverage for such trip begins on the later of when an Insured Person leaves his or her place of: (a) residence; or (b) regular employment; for the purpose of going on such trip.

Coverage for such trip terminates on the earlier of when an Insured Person returns to his or her place of: (a) residence; or (b) regular employment; following such trip . . . .

. . . .

SECTION II - DEFINITIONS

**When On Business For the Policyholder**

Furthering the business of the Policyholder. This does not include an Injury sustained during travel *to and from work*, leave of absence, vacation or personal deviation.

. . . .

**Bonafide Trip**

A trip made in good faith and authorized by the Policyholder for the purpose of furthering the business of the Policyholder.

(emphasis added).

As emphasized above, the Plan explicitly excludes from coverage injuries sustained "during travel to and from work." Thus the question of coverage turns on whether Elizabeth's accident occurred while she was on a "bonafide trip"—in which case Mr. Porter could recover benefits— or if her accident simply occurred "during travel to and from work"—in which case Mr. Porter could not recover benefits.

On May 14, 2008, Mr. Porter made a claim for benefits under the Plan. Newman investigated the claim and wrote to Lowe's to inquire into Elizabeth's employment schedule, her normal job duties, and whether she received a

No. 12-60683

workers' compensation award. Lowe's responded that her workers' compensation claim was "accepted as compensable based on [the] fact she was on a *special errand* while returning to the store to shut off the alarm." (emphasis added). Newman also wrote to Lowe's: "As Mrs. Porter's name was on file with the alarm company as an employee responsible to reply to an alarm, please confirm that this was part of her regular job duties." Lowe's "confirm[ed] that responding to alarms was part of Elizabeth Porter's regular job duties." While the job description of Elizabeth's duties does not specifically list responding to security alarm triggers, it does state that her job "requires morning, afternoon and evening availability any day of the week."

On October 22, 2008, Newman issued an opinion denying benefits which stated that "[a]t the time of the motor vehicle crash, Mrs. Porter was traveling to work to perform her regular job duties, thus, she was not on Business for the Policyholder during any bonafide trip at the time of her motor vehicle crash." Mr. Porter appealed the denial and Newman again denied benefits.

Mr. Porter appealed to the district court. The parties agreed that there was no need for discovery and filed cross-motions for summary judgment. The district court found that Newman's conclusion that Elizabeth was not on a bona fide business trip was legally incorrect and an abuse of discretion.

The district court entered judgment for Mr. Porter in the sum of $181,830.37, plus pre-judgment interest, but later denied Mr. Porter's request for attorneys' fees because there was no "bad faith" in denying the claim.

II.

"We review a district court's grant of summary judgment in ERISA cases de novo, applying the same standard as the district court."[3] Summary judgment

---

[3] *Lafleur v. La. H'lth Serv. & Indem. Co.*, 563 F.3d 148, 153 (5th Cir. 2009) (internal citations omitted).

No. 12-60683

is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[4]

When, as here, the ERISA plan grants the administrator the discretion to interpret the meaning of the plan, this court will reverse an administrator's decision only for an abuse of discretion.[5] The fact that the evidence is disputable will not invalidate the decision; the evidence "need only assure that the administrator's decision fall somewhere on the continuum of reasonableness—even if on the low end."[6] Stated differently, "If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail."[7] Applying an abuse of discretion review of an administrator's interpretation of the plan consists of a two-step process: first inquiring whether the plan administrator's decision was "legally correct,"[8] and, if it is not, secondly inquiring whether the administrator abused his discretion.[9]

---

[4] Fed. R. Civ. P. 56(a).

[5] *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008).

[6] *Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (internal citations omitted).

[7] *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).

[8] To determine if the administrator's decision is legally correct, the court considers: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Crowell*, 541 F.3d at 312 (quoting *Threadgill v. Prudential Secs. Grp.*, 145 F.3d 286, 292-93 (5th Cir. 1998)). The factor most worth considering is "whether the administrator's interpretation is consistent with a fair reading of the plan." *Id.* at 313 (quoting *Gosselink v. AT&T, Inc.*, 272 F.3d 722,727 (5th Cir. 2001)).

[9] *Crowell*, 541 F.3d at 312. If the court determines the administrator's interpretation is not legally correct, it can proceed to the second step and assesses whether the administrator abused its discretion, considering: "(1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink*, 272 F.3d at 726.

No. 12-60683

If the administrator both administers and insures the Plan, such a conflict of interest is weighed as a "factor in determining whether there is an abuse of discretion."[10]

Notably, this court can "bypass, without deciding, [the issue of] whether the Plan Administrator's denial was legally correct, reviewing only whether the Plan Administrator abused its discretion in denying the claim" if that can be "more readily determine[d]."[11]

### III.

The district court found that because the Plan reserved to the Administrator the discretion in both plan interpretation and eligibility determination, the proper standard of review is the arbitrary and capricious standard. And the district court found that there was no conflict of interest, as the Administrator was not also insuring the Plan. Neither party challenges these conclusions on appeal.

The district court held that the determination by Newman, the Plan Administrator, to deny benefits was not legally correct because the "only fair construction to put on the phrase 'travel to and from work' is travel in the ordinary daily commute" and found that this is the "commonly ascribed to this type of exclusion." After concluding that Newman's decision was not legally correct, the district court went on to conclude that the decision to deny benefits "was not supported by the evidence" and was an abuse of discretion.

Defendants argue that the district court essentially rewrote the terms of the Plan to cover Elizabeth's normal commute as a "bonafide business trip." They contend that Newman interpreted the phrase "travel to and from work" in

---

[10] *Crowell*, 541 F.3d at 312. (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008)).

[11] *Holland v. Int'l Paper Co. v. Ret. Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009).

No. 12-60683

its common sense meaning as dictated by this court's ERISA jurisprudence.[12] Further, when a plan administrator is given broad discretion to interpret a plan, it has the power to resolve ambiguities.[13] And as emphasized above, the question is not whether the interpretation of the Plan "is most persuasive, but whether the plan administrator's interpretation is unreasonable."*[14]*

Mr. Porter cites, and the district court relied upon, several cases with similar policy provisions as standing for the principle that accidents which take place during the ordinary commute are excluded from coverage, but business-related deviations beyond the normal commute—whether spatially or temporally—are covered.[15]

---

[12] *Tucker v. Shreveport Transit Mgmt. Inc.*, 226 F.3d 394, 398 (5th Cir. 2000).

[13] *See High v. E-Sys. Inc.*, 459 F.3d 573, 579 (5th Cir. 2006). Mr. Porter argues throughout that ambiguities must be construed in favor of the insured. While typically true, this is not the case when a plan administrator is given the discretion to interpret the terms of the plan.

> Only when the plan terms remain ambiguous after applying ordinary principles of contract interpretation does this court apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured. [Plaintiff] High's case, however, does not warrant the application of this rule; the language of the E-Systems Plan is [not] ambiguous and, as E-Systems suggests, by giving MetLife [the Plan Administrator] complete discretion to interpret the plans, if there had been an ambiguity, MetLife was empowered to resolve it, exercising "interpretive discretion."

*High*, 459 F.3d at 578-79 (citations omitted); *see also Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir. 1995) ("We hold that the rule of *contra proferentem* is not applicable to self-funded ERISA plans that bestow explicit discretionary authority upon an administrator to determine eligibility for benefits or to construe the terms of the plan.").

[14] *Winters*, 49 F.3d at 553 (internal quotation marks omitted).

[15] *See* 10 COUCH ON INS. § 143:13 ("Accidents that take place during an insured employee's everyday commute to and from the place of employment are generally explicitly excluded from coverage under business travel insurance policies in terms of 'commutation travel,' 'everyday travel,' 'day-to-day travel,' or similar phrasings intended to identify travel which is not, in essence, anything other than the insured's necessary and repeated efforts to get to and from work. . . . These provisions are generally construed by the judiciary to mean that there is no coverage during the regular travel between home and work for the sole purpose of reaching the intended destination.").

7

No. 12-60683

Most notably, the district court cited *Duffer v. American Home Assurance Co.*[16] There, the insured was killed while en route to pick up a co-worker to return to the office after hours in order to ascertain the cause of an inventory shortage.[17] The policy at issue, a non-ERISA group travel insurance policy, excluded coverage for "every day travel to and from work." This court concluded that had "the policy intended to exclude all travel to and from work or all travel between home and place of employment it could have done so simply."[18] However, the "modifying words 'every day' before the phrase 'travel to and from work' c[ould] not be disregarded as meaningless."[19] Thus, this court held that as a result of the modifying words *"every day,"* the policy only excluded travel on days and at hours normally related to his regular hours of employment; consequently, the insured was covered under the policy.[20]

The district court cited *Duffer* in favor of finding coverage for Mr. Porter. Yet as noted above, the policy in *Duffer* included the limiting provision "every day," and the Plan at issue here has no such language. Additionally, in *Duffer* this court acknowledged the importance of that limiting phrase and suggested that an employer could "exclude all travel to and from work or all travel between

---

[16] 512 F.2d 793 (5th Cir. 1975).

[17] *Id.* at 797.

[18] *Id.*

[19] *Id.*

[20] The other cases cited by the district court contained similar language, i.e., included "day to day" or "everyday." *See, e.g.*, *McNeily v. Lumbermens Mut. Cas. Co.*, 647 F. Supp. 1567, 1569-70 (E.D. Mich. 1986) ("day-to-day travel to and from work" exclusion did not apply to employee who was required to come to work for an open house on Saturday); *Ligo v. Cont'l Cas. Co.*, 338 F. Supp. 519, 524 (W.D. Pa. 1972) ("everyday travel to and from work" exclusion did not apply to employee required to deviate from his regular commute to pick up employer's mail); *Morningstar v. Ins. Co. of N. Am.*, 295 F. Supp. 1342, 1346 (S.D.N.Y. 1969) ("commutation travel" exclusion did not apply to employee who deviated from normal commuting route to discuss business at another company).

8

No. 12-60683

home and place of employment" if it so intended.[21] Furthermore, neither *Duffer* nor any of the cases cited by the district court involved an ERISA plan in which the plan administrator was given the discretion to interpret the terms of the plan.

As discussed above, in our review of the Plan Administrator's decision this court can bypass, without deciding, whether the determination was legally correct, and move directly to whether the determination was an abuse of discretion.[22] Taking that course here, we conclude, based on the record and arguments made by the parties, that the Plan Administrator did not abuse its discretion in denying coverage. The Plan Administrator was not operating under a conflict of interest and was vested with the power to interpret the terms of the Plan. All of the cases cited by the district court and Mr. Porter contained plans with limiting language, i.e., "commutation," "day-to- day," or "everyday." The Policy here contains no such language. And Elizabeth's job description at least required "morning, afternoon and evening availability," such that Elizabeth's trip arguably was not a temporal or spatial deviation from her normal commute. While Mr. Porter emphasizes that Elizabeth qualified for a workers' compensation award because she was on a "special errand" for her employer, that is a state law concept which the terms of the Plan do not reference, and coverage under worker's compensation does not necessarily mean that coverage under the ERISA Plan follows. For these reasons, we find that the Plan Administrator's denial of coverage was not an abuse of discretion.[23]

---

[21] *Id.*

[22] *See Holland*, 576 F.3d at 246 n.2. *See also Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994) ("However, the reviewing court is not rigidly confined to this two-step analysis in every case.").

[23] Consequently, we need not address Defendants' argument that a business trip had not commenced as required by the Plan because "Coverage for such a trip begins on the later of when an Insured Person leaves his or her place of: (a) residence; or (b) regular employment;

No. 12-60683

IV.

Accordingly, we REVERSE the district court and RENDER judgment in favor of defendants.

REVERSED.

RENDERED.

---

for the purpose of going on such trip." And because we conclude that the Plan Administrator did not abuse its discretion in denying coverage under the Plan, we need not address Defendants' argument that the district court erred in calculating prejudgment interest, or Mr. Porter's argument on cross-appeal that the district court erred in declining to award attorneys' fees.