# United States Court of Appeals
# for the Fifth Circuit

_____

No. 22-20516

_____

United States Court of Appeals
Fifth Circuit

**FILED**
July 21, 2023

Lyle W. Cayce
Clerk

Deepa Krishna,

*Plaintiff—Appellant*,

*versus*

Life Insurance Company of North America; Honeywell International, Incorporated Accidental Death and Dismemberment Plan; Honeywell International, Incorporated; Steven Jacobs; Honeywell International, Incorporated Benefit Plan,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1813

_____

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Deepa Krishna brought this suit under the Employees Retirement Security Act of 1974, 29 USC § 1001, *et seq.* ("ERISA") after her husband Karthik Balakrishnan died in the crash of a

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-20516

relatively small private airplane on which he was a passenger. Recovery was denied under ERISA because of an express exclusion of death or injury incurred as a passenger in such an aircraft. Krishna appeals the denial of summary judgment regarding her claim for benefits under ERISA § 502(a)(1)(B) against Defendants-Appellees Life Insurance Co. of North America ("LINA"), Honeywell International Inc. Accidental Death and Dismemberment Plan, Honeywell International, Inc., Steven Jacobs, Vice President of Compensation and Benefits for Honeywell International Inc., and Honeywell International Inc. Benefit Plan (collectively "Honeywell"). Krishna also appeals the district court's grant of LINA and Honeywell's cross-motion for summary judgment. For the following reasons, we affirm the district court's judgment.

## I.    Factual and Procedural Background

Plaintiff Deepa Krishna is the widow of Karthik Balakrishnan and the mother of their young daughter. Balakrishnan began working at Honeywell International, Inc. in August 2019 and became a participant in the Honeywell International, Inc. Benefit Plan ("the Plan"), which is governed by ERISA. That plan provided Balakrishnan with accidental death and dismemberment ("AD&D") benefits totaling $1,881,000 under Group Accident Policy No. OK 980358, which was underwritten by LINA ("the Policy").

On October 25, 2020, Balakrishnan died when in the crash of a privately-owned, single-engine airplane in which he was a passenger. Krishna filed a claim under the Honeywell International, Inc. Benefit Plan, and LINA approved her claim for life insurance benefits in the amounts of $297,000 and $1.58 million on December 1, 2020. On December 31, 2020, however, LINA denied her claim for accidental death benefits, citing the Policy's Common Exclusions that include "[a] loss caused by or resulting from flight in an aircraft is specifically excluded from coverage . . . . except in the case where

an insured is traveling as a fare-paying passenger on a regularly scheduled commercial airline." Krishna appealed, but LINA denied her appeal on March 23, 2021 for the same initial reasons.

On June 4, 2021, Krishna sued LINA and Honeywell seeking accidental death benefits under ERISA § 502(a)(1)(B) or, alternatively, equitable relief under ERISA § 502(a)(3) for breach of fiduciary duty, misinformation, equitable estoppel, and surcharge based on summary plan description deficiencies. 29 U.S.C. § 1132(a)(1)(B), (a)(3). On February 10, 2022, Krishna moved for summary judgment on her § 502(a)(1)(B) claim only. LINA filed an opposition and cross-motion for summary judgment regarding the § 502(a)(1)(B) claim, in which Honeywell joined. After those motions were filed, Krishna moved for voluntary dismissal of her § 502(a)(3) claim in its entirety "to avoid the further stress and anxiety of reliving painful events."

On August 11, 2022, the magistrate judge issued a memorandum and recommendation ("the Recommendations") which recommended that Krishna's motion for partial summary judgment regarding § 502(a)(1)(B) be denied and LINA and that Honeywell's cross-motion for summary judgment be granted. The district court reviewed the magistrate judge's conclusions *de novo* and adopted the Recommendations, dismissing Krishna's § 502(1)(B) claim with prejudice. The district court also granted Krishna's motion for partial voluntary dismissal, dismissing § 502(a)(3) claim without prejudice. Krishna timely filed an appeal regarding the rulings on the motions for summary judgment.

## II.   STANDARD OF REVIEW

We review a district court's summary judgment rulings *de novo*. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998) (citing *FDIC v. Myers*, 955 F.2d 348, 349 (5th Cir. 1992)). "Whether the district court

employed the appropriate standard in reviewing an eligibility determination made by an ERISA plan administrator is a question of law." *Lynd v. Reliance Standard Life Ins. Co.*, 94 F.3d 979, 980–81 (5th Cir. 1996) (citing *Chevron Chem. Co. v. Oil, Chem. & Atomic Workers Local Union 4–447*, 47 F.3d 139, 142 (5th Cir. 1995)). "When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a plan lacks a valid delegation clause, "a denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a *de novo* standard." *Firestone*, 489 U.S. at 102.

### III.   Law and Analysis

On appeal, Krishna asserts that (1) LINA was never vested with discretionary authority over the Policy; (2) LINA considered a summary plan document that was not operable at the time of Balakrishnan's death; (3) as plan administrator, LINA's interpretation of the flight exclusion was an abuse of discretion; (4) LINA's interpretation of the flight exclusion was legally incorrect under this circuit's multifactor test; and (5) Honeywell and LINA violated ERISA regulations during the claims process, depriving Krishna of a full and fair review. We examine each contention in turn.

### A. Whether the operative Plan documents vested LINA with discretionary authority

Krishna asserts that LINA was never vested with discretionary authority under ERISA to determine her accidental death benefits claim. Central to this and her other contentions is a dispute regarding which coverage-related documents were operative from the time of Balakrishnan's start of employment on August 19, 2019, through his death on October 25,

2020. The parties agree that the AD&D components of his benefits plan were insured through the Policy, but disagree as to whether a 2003-dated document displaces the alleged 2019 version of that document. Krishna also alleges that various documents were never produced to Balakrishnan during his employment or to her during the claims process. We first determine which documents were operative during the relevant time period and then whether such documents vested LINA with discretionary authority.

### i.  *Which documents were operative during the relevant timeframe?*

Krishna agrees that the Policy was operative at all relevant times but contends that the Plan and the Summary Plan Description ("the 2019 SPD"), should be disregarded as nonoperative. Krishna alleges that she did not gain possession of the Plan and the 2019 SPD until after this litigation was initiated, so they cannot be determinative of her claim. Krishna asserts that a document dated January 1, 2003 ("the 2003 Honeywell SPD") was provided to her in January 2021, during the claims process, and again in November 2021, through Honeywell's administrative record production. Moreover, Krishna claims that her husband was given the 2003 SPD shortly after he began employment at Honeywell. Krishna therefore alleges that the 2019 SPD and the Plan should be disregarded as related to her claim.

On the other hand, LINA and Honeywell assert that the Plan and the 2019 SPD form one operative "Wrap Plan Document," which, along with the Policy, govern Krishna's claim. LINA and Honeywell claim that the Plan and the 2019 SPD are dated January 1, 2019, so that any previous versions of those documents were no longer operative during the relevant timeframe. LINA points to the declaration of Kristine Vandergriff, which was attached to LINA and Honeywell's cross-motion for summary judgment. Vandergriff, who has served as the Senior Benefits Manager at Honeywell since 2021,

identified the Plan, the 2019 SPD, and the Policy as the operative documents related to Krishna's AD&D claim. LINA further contends that Krishna has not established the origin of the 2003 Honeywell SPD and that any failure to produce Plan-related documents was Honeywell's—not LINA's—responsibility. LINA asserts that, even if this had been its own responsibility, Krishna has failed to show how missing the 2019 SPD would deny her a full and fair review of her claim. LINA notes that Krishna "was admittedly in possession of the Policy, the actual governing Plan document upon which LINA's determination was based."

The magistrate judge considered all of the coverage-related documents at issue, including the Policy, the Plan, the 2019 SPD, and the 2003 SPD, concluding that the Policy, the Plan, and the 2019 SPD were effective during the relevant timeframe and validly delegated discretionary authority to LINA. The magistrate judge did not engage in a specific analysis of whether the 2003 SPD was operative during the relevant timeframe and thus displaced the 2019 SPD. The magistrate judge only explained that the 2003 SPD "is silent regarding discretion to decide claims."

We first resolve the dispute regarding which documents were operative from August 19, 2019 to October 25, 2020. The Plan and the 2019 SPD speak for themselves. The Plan is titled "Honeywell International Inc. Benefit Plan and Summary Plan Description (As Amended and Restated Effective **January 1, 2019**)." The Plan clarifies that "it consists of this document including any Appendices attached hereto and incorporated herein by reference." Included in these appendices are various Benefit Booklet-Certificates, such as the Policy. Moreover, the Group Accident Certificate, which is part of the 2019 SPD, specifically references the Policy by number. We next note that Vandergriff's declaration credibly identifies the Policy, the Plan, and the 2019 SPD as the relevant, operative documents and explains that "[a]ny earlier version of a SPD . . . was not the applicable

SPD during August 2019 through October 2020." Krishna has not shown how the 2003 SPD—which is dated January 1, 2003, and does not even reference the Policy—displaces the 2019 SPD. Although the 2003 SPD is part of the administrative record that LINA produced, it appears to have been produced as part of Krishna's submission on appeal, rather than as a benefits-related document. Therefore, the 2019 SPD should not be disregarded in favor of the 2003 SPD. The Plan, the Policy, and the 2019 SPD were operative documents during the relevant time frame.

### ii. Did the operative documents vest LINA with discretionary authority?

Krishna acknowledges that the 2019 SPD "has adequate language to vest LINA with discretion," but contends that the 2019 SPD "should not even be consulted as the operative SPD, as it was never treated as such by Honeywell." Krishna asserts that, even if the 2019 SPD were consulted, the Policy language alone governs and the 2019 SPD cannot waive or alter any of its terms.

LINA and Honeywell, on the other hand, assert that the Plan, the 2019 SPD, and the Policy clearly delegate claim adjudication authority from Honeywell, as Plan Administrator, to a named fiduciary, such as LINA. LINA and Honeywell note that the Plan states that the "Plan Administrator has the authority, in the Plan Administrator's sole discretion, to interpret the Plan and resolve ambiguities therein … and to make factual determinations." They further note that the 2019 SPD states "[t]he Plan Administrator [Honeywell] has appointed the Insurance Company [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims." Honeywell and LINA also observe that the Policy contains nearly the same language: "[t]he Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for

deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." LINA and Honeywell also note that, under this circuit's precedent, the language in these documents is sufficient to delegate discretionary authority under ERISA.

The district court, through the magistrate judge's Recommendations, held that the language of the Policy, the Plan, and the 2019 SPD validly delegated discretion to LINA. Those Recommendations concluded that the language used in the documents "is consistent with language the Fifth Circuit has found sufficient to confer discretion."[1] The district court explained that the Policy's language neither directly conflicts with nor invalidates the delegation of discretion contained in the 2019 SPD. That court acknowledged that "[w]hile the language in the Policy itself may not be sufficient to confer on LINA full discretionary authority to interpret the Policy. . . the language in the 2019 SPD and Insurance Certificate clearly is." The district court considered the 2003 SPD but noted that it "is silent regarding discretion to decide claims." Concluding that LINA was properly vested with discretionary authority, the district court applied an abuse-of-discretion standard of review to LINA's denial of Krishna's claim.

ERISA defines "fiduciary" as one who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). A fiduciary also has "authority to control and manage the operation and administration of the plan," § 1102(a)(1), and must provide a "full and fair review" of claim denials, § 1133(2). The Fifth Circuit does not require the use of "discretion" or other

---

[1] *See Batchelor v. Int'l Bhd. Of Elec. Workers Loc. 861 Pension & Ret. Fund*, 877 F.2d 441, 443 (5th Cir. 1989); *Dowden v. Blue Cross & Blue Shield of Tex., Inc.*, 126 F.3d 641, 644 (5th Cir. 1997).

"magic words" to validly delegate discretionary authority to a fiduciary. *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992) (quoting *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992)). "Rather, the Supreme Court directed lower courts to focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.'" *Jimenez v. Sun Life Assur. Co. of Canada*, 486 F. App'x 398, 405 (5th Cir. 2012) (internal citation omitted in original). In doing so, courts must "read the plan as a whole" to see whether it satisfies the criteria promulgated by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*. *Wildbur*, 974 F.2d at 636–37. As this circuit has recognized, "[a] different standard of review will sometimes lead to a different outcome, but there will also be many cases in which the result would be the same with deference or without it." *Ariana M.*, 884 F.3d at 257.

We conclude that the Policy, the Plan, and the 2019 SPD vested LINA with discretionary authority to adjudicate Krishna's AD&D claim. First, the 2019 SPD and the Plan's key language cited by LINA and Honeywell clearly permits the delegation of discretionary authority to a fiduciary such as LINA. That language encompasses the authority to make both factual and legal determinations under the Plan, as required by ERISA and by this circuit's precedent. *See Jimenez*, 486 F. App'x at 405. The Policy contains nearly identical language to that found in the 2019 SPD regarding the delegation of discretionary authority. When read "as a whole," the language of the Policy, the Plan, and the 2019 SPD demonstrate that LINA, as the named fiduciary, was vested with discretionary authority. The district court thus correctly applied the abuse-of-discretion standard of review to LINA's denial of AD&D benefits. We now determine whether LINA, in its authority as named fiduciary, abused its discretion in denying Krishna's claim.

**B.  Whether LINA's interpretation of Exclusion 6 was an abuse of discretion**

Exclusion 6 in the Policy's "Common Exclusions" section is central to this dispute because LINA relied on that exclusion when it denied Krishna's claim. The relevant section states:

> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, … is caused by or results from any of the following…:
>
> *    *    *
>
> **6. flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:**
>
> a.  **except as a passenger on a regularly scheduled commercial airline;**
>
> b.  being used for:
>
>   i.  crop dusting, spraying or seeding, giving and receiving flying instruction, firefighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or
>
>   ii.  any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
>
> c.  designed for flight above or beyond the earth's atmosphere;
>
> d.  an ultra-light or glider;
>
> e.  being used for the purpose of parachuting or skydiving;
>
> f.  being used by any military authority…

No. 22-20516

As a preliminary matter, Krishna asserts that the 2003 SPD's "Common Exclusions" section displaces Exclusion 6 in the Policy.[2] As explained above, we disagree because Krishna has not shown that the 2003 SPD was the operative document during the relevant time period. Krishna alternatively contends that if Exclusion 6 governs, it should be strictly construed in favor of the insured because it is ambiguous. Krishna asserts that Exclusion 6's poor construction leaves it open to more than one reasonable interpretation, such as "6.b.-f. as explanation of what exactly is excluded if one is **not** a commercial airline passenger excepted from exclusion by 6.a." Although Krishna contends that *de novo* review is appropriate here, she asserts that LINA's interpretation of the Policy was also an abuse of discretion. Krishna contends that LINA abused its discretion because its interpretation of Exclusion 6 was legally incorrect, as more fully explained below.

According to LINA and Honeywell, Exclusion 6 excludes AD&D benefits for a death caused by flight in, boarding, or alighting from an aircraft

_____

[2] The 2003 Honeywell SPD excludes many of the same items that the Policy excludes, but with relevant differences. The Honeywell SPD excludes:

- Travel in an aircraft (including getting on or off the aircraft) if the aircraft is being used:
  - For test or experimental purposes; or
  - By or for any military authority, including aircraft flown by the U.S. Military Airlift Command (MAC) or similar service of another country); or
  - For travel, or is designed for travel, beyond the earth's atmosphere; or
  - By or for the Employer, whether owned, leased, operated or controlled by the Employer, including chartered aircraft; or
- Travel in an aircraft (including getting on or off the aircraft) if you or a Dependent is:
  - Serving as pilot or crew member (or student taking a flying lesson) and is not riding as a passenger; or
  - Hang-gliding; or
  - Parachuting unless necessary for self-preservation ...

in general *unless* the insured was a passenger on a regularly scheduled commercial airline. LINA and Honeywell insist that the subparts listed under Exclusion 6 are merely illustrative examples—not specific exclusions. In other words, LINA reads the phrase preceding Exclusion 6 to be the preamble, with each subpart—(a)-(f)—independently following to create a complete sentence that states: "benefits will not be paid for any … Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from … flight in, boarding or alighting from an Aircraft … except as a passenger on a regularly scheduled commercial airline." LINA insists that Krishna cannot show that this interpretation was "legally incorrect" because (1) "LINA has applied its interpretation uniformly for at least a dozen years," (2) "there would be unanticipated costs to the Plan from private-flight losses like Krishna's," and (3) "LINA's interpretation—confirmed as unambiguously correct by multiple federal judges—was a fair reading of the Plan's text."

The magistrate judge's Recommendations concluded that LINA's interpretation of Exclusion 6 was legally correct and therefore was "consistent with a fair reading of the Plan." The magistrate judge endorsed LINA's view that the structure of the "Common Exclusions" section is a "preamble, followed by numbered paragraphs 1-11, which in turn contain indented subparts (such a 6(a) through 6(f))." Referencing a text authored by Justice Antonin Scalia and Bryan Garner,[3] the magistrate judge agreed that Exclusion 6 may be read as one continuous sentence, starting with the preamble and ending with subpart (f). The magistrate judge explained that "[t]his reading is consistent with the ordinary meaning of the words in the

_____

[3] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012) (discussing the scope of subparts canon).

provisions as well as the 'scope of subparts canon' of contract construction," which provides that "[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts."[4] The magistrate judge further explained that the structure of this provision prevents the ambiguity that Krishna claims to exist "by reading subparts (a)-(f) as a whole." The Recommendations ultimately conclude that LINA's interpretation was not an abuse of discretion under this circuit's precedent.

"Interpretations of policy provisions in ERISA-regulated plans are governed by federal common law." *Talamantes v. Metro. Life Ins. Co.*, 3 F.4th 166, 169 (5th Cir. 2021); *see also Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017). Federal common law rules of contract construction and interpretation incorporate ordinary rules of contract construction. *See Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014). "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists . . . [o]nly if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured." *Talamantes*, 3 F.4th at 169.

A plan administrator/fiduciary may abuse its discretion by denying claims on either legal or factual grounds. *Ariana M.*, 884 F.3d at 248. "Legal grounds" refers to the *interpretation* of a plan's terms, while "factual grounds" refers to the *application* of a plan's terms. *Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 956 (5th Cir. 2019) (per curiam). For legal disputes—that is, disputes about a plan's meaning—the abuse-of-discretion

---

[4] *Id.*; *see also Matter of Pirani*, 824 F.3d 483, 495 (5th Cir. 2016)).

analysis has "two steps." *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, 919 F.3d 266, 282 (5th Cir. 2019). The first step asks whether the administrator's reading is "legally correct." *Id.* To determine if a decision is legally correct, a court considers "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Porter v. Lowe's Cos., Inc.'s Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 364 n.8 (5th Cir. 2013). The second consideration is the more critical. *Id.* If the decision is deemed legally correct, "the inquiry ends, and there was no abuse of discretion." *Id.* But if not, we proceed to step two, which employs several factors to decide whether the administrator's legally erroneous interpretation of the plan's terms still falls within the administrator's discretion. *See id.* Under the abuse-of-discretion standard, the court must uphold the plan administrator's decision if it "fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Conn. Gen. Life Ins. Co.*, 878 F.3d 478, 483; *see also Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020).

Here, the district court, through its adoption of the magistrate judge's Recommendations, correctly determined that LINA did not abuse its discretion in interpreting Exclusion 6 of the Policy. LINA denied Krishna's claim on legal rather than factual grounds, so we must engage in this circuit's two-step test to determine whether LINA's interpretation was "legally correct." *Porter*, 731 F.3d at 364 n.8. The Recommendations noted that the parties' briefing did not fully address whether LINA applied a uniform interpretation or whether Krishna's interpretation would create unanticipated costs. Instead it focused on whether LINA's interpretation was consistent with a fair reading of the Plan. We do the same.

First, applying "ordinary rules of contract construction," we conclude that LINA's interpretation is consistent with a fair reading of the

Plan. Reading Exclusion 6 and its preamble as one continuous sentence aligns with the "scope of subparts canon of contract construction," which we have previously endorsed.[5] We also agree that the structure of the Common Exclusions section prevents the ambiguity that Krishna insists is created by reading subparts (a)-(f) as a whole. We have previously held that overlapping or even redundant exclusions do not necessarily render a policy exclusion ambiguous. See *Const. State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 409 (5th Cir. 1995). There, we pointed out that "[g]iven the strict rules of construction against a drafter, an insurance provider would be motivated to draft overlapping and redundant clauses which exclude coverage for the same conduct." *Id.*

On at least two occasions, federal courts have upheld LINA's interpretation of substantially similar flight exclusions.[6] *Weber v. Life Ins. Co.*

_____

[5] *Pirani*, 824 F.3d at 495.

[6] The language of the flight exclusions at issue in those cases was nearly identical to Exclusion 6 but with the addition of a subsection 6b. They read:
> 6. flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:
> > a. except as a passenger on a regularly scheduled commercial airline;
> > b. being flown by the Covered Person or in which the Covered Person is a member of the crew;
> > c. being used for:
> > > i. crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or
> > > ii. any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
> > d. designed for flight above or beyond the earth's atmosphere;
> > e. an ultra-light or glider;
> > f. being used for the purposes of parachuting or skydiving;
> > g. being used by any military authority, except an Aircraft used by the Air Mobility Command or its foreign equivalent.

*of N.A.*, 836 F. Supp. 2d 427 (W.D. Va. 2011), *aff'd*, 492 F. App'x 444 (4th Cir. 2012); *Toohey v. Wyndham Worldwide Corp. Health & Welfare Plan*, 727 F. Supp. 2d 978 (D. Or. 2010). In *Weber*, the district court for the Western District of Virginia held that the ordinary meaning of Exclusion 6's language was unambiguous. The *Weber* court explained that "subparagraphs (b) through (g) stand as additional, independent grounds of exclusion that address plausible factual scenarios not presented in this case." 836 F. Supp. 2d at 435. As we see no reason to depart from this well-founded view, we hold that this interpretation is legally correct and that LINA did not abuse its discretion in denying Krishna's claim.

## C. Whether Honeywell violated ERISA regulations

Krishna contends on appeal that Honeywell and LINA violated ERISA's procedural regulations by supplying a deficient 2019 SPD and by withholding various documents during the claims process. Both of these contentions are unavailing because (1) Exclusion 6 in the Policy is unambiguous; (2) Krishna waived her claims regarding any deficiencies in the 2019 SPD; and (3) Krishna also waived her claims regarding LINA and Honeywell's failure to produce documents during the claims process.

Krishna first contends that because of Exclusion 6's alleged ambiguity, the 2019 SPD must be consulted for its AD&D exclusion language. Krishna asserts that, when thus consulted, the 2019 SPD's applicable language violates ERISA's requirement that an exclusion be expressed with clarity. Krishna further asserts that 2019 SPD violates ERISA's requirement that the "[t]he description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that

---

*Weber*, 836 F. Supp. 2d at 433; *Toohey*, 727 F. Supp. 2d at 984–45.

adjacent to the benefit description the page on which the restrictions are described is noted." 29 C.F.R. § 2520.102–2. Finally, Krishna alleges that the 2019 SPD violates ERISA's requirement that a "summary plan description must not have the effect to misleading, misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102.

Krishna next asserts that LINA and Honeywell violated ERISA § 1024(b) and its corresponding regulation, 29 C.F.R. § 2560.503-1(b)(5), by failing to furnish the 2019 SPD to Balakrishnan or to Krishna during the claims process. Section 2560.503-1(b)(5) requires that "claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents." 29 C.F.R. § 2560.503-1(b)(5). ERISA § 1024(b) requires that the plan administrator provide a copy of the summary plan description within 90 days after an employee's enrollment in a benefits plan or on written request from any participant or beneficiary. 29 U.S.C. § 1024(b)(1)(A), (b)(4). In support of this contention, Krishna references January 2021 emails between herself and Denise Cherney, Honeywell's HRS Benefits Analyst, in which Cherney represented that "full plan documentation, summary plan description and policy have been provided." Krishna also cites to Cherney's deposition testimony and a January 2021 email exchange between Cherney and LINA regarding Krishna's claim. Krishna asserts that these documents show that LINA and Honeywell were both aware that the 2003 SPD was the operative SPD during the relevant time frame and that they knowingly failed to produce Plan-related documents when requested.

We have already determined that Exclusion 6 is unambiguous. Therefore, it is unnecessary to examine the 2019 SPD for deficiencies as they relate to the claims process. Even if Exclusion 6 were ambiguous, "claims for injuries relating to SPD deficiencies are cognizable under ERISA § 502(a)(3)

and not ERISA § 502(a)(1)(B)." *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 866 (5th Cir. 2018). On the second page of her brief, Krishna clearly states that her ERISA § 502(a)(3) cause of action "was voluntarily dismissed and is not at issue here." Krishna has thus waived any claims related to regulatory deficiencies associated with the 2019 SPD.

Krishna has also waived her claims related to LINA and Honeywell's withholding of particular Plan-related documents, in violation of ERISA § 1024(b) and corresponding ERISA regulations. In her second amended complaint, Krishna asserted these claims under ERISA § 502(a)(3), "as it relates to deficiencies in Summary Plan Description duties, disclosures and deficiencies." Krishna clarified that her § 502(a)(3) cause of action was pleaded "only in the alternative to, and completely independent of" her cause of action under § 502(a)(1)(B).

As noted above, Krishna expressly stated in her brief that her § 502(a)(3) cause of action "was voluntarily dismissed and is not at issue here." Indeed, in her motion for summary judgment, which is now before this court, Krishna clarified that the "motion only involves only Plaintiff's first cause of action" under § 502(a)(1)(B). Accordingly, any arguments related to her § 502(a)(3) claim were not before the court when the magistrate judge made the Recommendations. Although we review the summary judgment record *de novo*, we will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 (5th Cir. 1992); *John v. Louisiana*, 757 F.2d 698, 710 (5th Cir. 1985). Krishna has therefore waived any claims that are cognizable under ERISA § 502(a)(3).

## IV.   CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Krishna's motion for summary judgment and its grant of Honeywell and LINA's cross-motion for summary judgment. This appeal is therefore DISMISSED.